IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TROY D. WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | 00-AR-2030-J |
| TRANS UNION, L.L.C., et al., ) | |
| ) | |
| Defendants. ) | |

ENTERED
NOV 1 2000

**MEMORANDUM OPINION**

Upon defendants' removal of the above-entitled action, this court, as it has been known to do from time to time under such procedural circumstances, and as it must do when there is any doubt about the existence of subject matter jurisdiction, *sua sponte* raised the issue of subject matter jurisdiction. In this case, the answer rests on whether the complete preemption doctrine applies when a well-pleaded complaint in a state court contains allegations that could support a cause of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (1994 & Supp.II 1996)("FCRA") but when that statute is not invoked. For the reasons set forth in the following opinion, the court finds that it lacks jurisdiction and will remand this action.

**Procedural History and Facts**

The complaint filed in the Circuit Court of Fayette County, Alabama, by plaintiff, Troy D. Watkins ("Watkins"), contains two counts against defendants, Trans Union, LLC ("Trans Union"), a credit reporting agency, and B.F. Goodrich Credit Union ("Goodrich Credit Union"). Count I alleges that Trans Union and Goodrich Credit Union injured him by causing or allowing the dissemination of inaccurate information regarding his credit history and credit worthiness. Count II alleges that defendants are responsible for publishing defamatory or libelous statements about plaintiff. As the basis for relief, plaintiff invokes no specific law – either state nor federal.

Following service of the Complaint, defendants filed separate notices of removal. In addressing the requirement in 28 U.S.C. § 1441 that the removed action originally could have been brought in federal court, both defendants rely on 28 U.S.C. § 1331, which establishes that district courts have original jurisdiction of actions arising under a law of the United States. The law of the United States under which plaintiff's action arises, defendants assert, is the FCRA.

## Discussion

A.  <u>Relevant doctrines: the well-pleaded complaint, artful pleading, complete preemption, and defensive preemption</u>

The well-pleaded complaint rule determines the presence or

absence of federal jurisdiction that will support removal. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987). Generally, if the face of the complaint **necessarily** implicates a federal claim, a federal question exists. *See Franchise Tax Bd. of Cal. V. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-12, 103 S.Ct. 2841, 2846-2847, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Watkins's complaint is stonily silent as to the legal basis of his claims. While this silence suggests a degree of calculation, under the rule it compels a finding of that no federal question exists from the face of the complaint.

Appropriately, Trans Union and Goodrich Credit Union do not contend that the face of the complaint establishes original federal jurisdiction. Instead, they seek to bring the complaint into this court under the corollary to the well-pleaded complaint rule, namely, the artfully pleaded complaint doctrine. If a complaint is artfully pled, a plaintiff has omitted pleading a necessary federal question. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 22, 103 S.Ct. at 2853). If a defendant can show the necessity of the federal element to

plaintiff's cause of action despite plaintiff's omission, federal jurisdiction exists. *See id.* This doctrine, then, permits a defendant to remove an action when "federal law completely preempts a plaintiff's state-law claim." *Id.* Although application of complete preemption has been substantially limited to the context of the LMRA and ERISA, in theory it applies anytime a federal statute's "extraordinary pre-emptive power ... converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co.*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547 (1987). The doctrine of complete preemption must be distinguished from the similarly-named doctrine of "defensive (or ordinary) preemption." Complete preemption of state law by federal law is jurisdictional in nature; it allows a defendant to halt state adjudication of a state cause of action by removing the action to federal court. Defensive preemption of state law by federal law, on the other hand, "operates to dismiss state claims on the merits and may be invoked in either federal or state court." *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 855(11$^{th}$Cir. 1999).

In support of removal, defendants invoke separately the artful pleading and complete preemption doctrines. While the Supreme

Court has distinguished the two in establishing that the latter is a subset of the former, see *Rivet*, 522 U.S. at 475, 118 S.Ct. at 925, defendants do not provide an identifiable argument for an exception to the well-pleaded complaint rule that does not ultimately rely on the rationale for application of complete preemption. Under either label, defendants' claim for the essential federal nature of this action stems from the FCRA's preemption of plaintiff's cause of action. Thus, the question becomes whether the complete preemption exception to the well-pleaded complaint rule applies where plaintiff's allegations state a claim under the FCRA.

B. <u>Extension of the complete preemption doctrine</u>

This question has not been addressed head-on by any authority whose decisions are binding on this court, but several district courts from other circuits have answered it.[1] With one exception, an unreported case, *Williams v. Metropolitan Life Ins.*, 1994 WL 529880 (S.D.N.Y.) (treating as one in the same the question of

---

[1] Defendants cite *Lockard v. Equifax*, 163 F.3d 1259 (11th Cir. 1998) as controlling authority on the removability of FCRA claims. The court finds *Lockard* inapplicable. In *Lockard*, the Eleventh Circuit addresses the issue of the removability of an action brought in state court which alleged violations of both FCRA and state law. Under these circumstances, the analysis is much kinder to defendants: removal is only improper if Congress has expressly prohibited it. Thus, the well-pleaded complaint rule and complete preemption are not mentioned, let alone at issue, in *Lockard*.

whether FCRA provides a defensive preemption of state law claims and the question of whether it provides for the removal of state law claims), those courts found that complete preemption does not apply in the FCRA context.[2] While the cases remanding the action to state court reveal analytical variations among the circuits, the leading case, *Harper*, relies heavily on analysis of the jurisdictional grant in the FCRA, 15 U.S.C. § 1681p, in reaching that conclusion.[3] See *Harper*, 881 F.Supp. at 299-300; see also *Rule*, 36 F.Supp.2d at 338-39 (discussing *Harper*); *Swecker*, 31 F.Supp.2d at 539-40 (same); *Sherron*, 977 F.Supp. at 808 (same).

Aside from these cases, and more influential if only for its precedential value, is the Eleventh Circuit's opinion in *BLAB T.V.* That court, relying on relevant Supreme Court cases, explicitly provided guidance, if not a test, on a broader question relevant to this court's determination: whether to extend the complete

---

[2] See *Saia v. Universal Card Services*, 2000 WL 863979 (E.D. La.); *Rule v. Ford Receivables*, 36 F.Supp.2d 335 (S.D. W.Va. 1999); *Swecker v. Trans Union*, 31 F.Supp.2d 536 (E.D. Va. 1998); *Sherron v. Private Issue By Discover*, 977 F.Supp. 804 (N.D. Miss. 1997); *Harper v. TRW, Inc.*, 881 F.Supp. 294 (E.D. Mich. 1995); *Hughes v. Fidelity Bank*, 709 F.Supp. 639 (E.D. Pa. 1989).

[3] It should be noted that *Lockard*, in dictum, ostensibly disagrees with *Harper*. See *Lockard*, 163 F.3d at 1263-64, nn.5, 6. However, this disagreement appears to rely on a mischaracterization of the issue in *Harper*. The distinction between the analysis required in *Lockard* and that required in *Harper*, *BLAB T.V.*, and the present action is noted supra in footnote 1 and in *Rule*, 36 F.Supp.2d at 338 n.5 (acknowledging that the action in *Lockard* was held to be removable, but stating that the decision had no bearing on its analysis and conclusion that the complete preemption exception does not apply to a well-pleaded complaint that could support a FCRA cause of action).

preemption doctrine to a new statutory context. *See BLAB T.V.*, 182 F.3d at 855-59 (citing *Metropolitan Life, Caterpillar, Franchise Tax Bd. of Cal.*, and *AVCO Corp. v. Aero lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)). Defendant in *BLAB T.V.* removed an action facially limited to state law claims and asserted that § 612 of the Cable Communications Policy Act of 1984 ("Cable Act") "extended federal jurisdiction over [plaintiff's] claims even though they were based on state law." *BLAB T.V.*, 182 F.3d at 853. The court stated that accepting defendant's argument turned on whether Congress intended the Cable Act to "replicate the jurisdictional force of the LMRA and ERISA." *BLAB T.V.*, 182 F.3d at 858. Therefore, while conscious of that court's express refusal to state a test for such a determination in subsequent cases, *see BLAB T.V.* at 858-59, this court turns to the Eleventh Circuit's examination of the propriety of removal of the action in *BLAB T.V.*[4]

In the court's analysis of the Cable Act, and of § 612 in particular, chief among the factors cutting in favor of complete

---

[4] *BLAB T.V.*'s analysis has been employed in two recent Eleventh Circuit district court opinions. *See Circle Redmont, Inc. v. Mercer Transportation Co.*, 78 F.Supp.2d 1316 (M.D.Fla. 1999)( "Like section 612 of the Cable Act, the Carmack Amendment's language and legislative history do not manifest an intent to transform state law claims into federal claims on removal."); *Penelas v. Arms Technology, Inc.*, 71 F.Supp.2d 1251 (S.D. Fla. 1999) (remanding on the grounds that state law claims against defendant gun manufacturers and trade groups were not completely preempted by the Commerce Clause, the Import/Export Clause, or the Due Process Clause).

preemption was the resemblance of the language in the jurisdictional grant for § 612 to that in § 301 of LMRA, 29 U.S.C. § 185. Yet, despite the Supreme Court's finding in *Metropolitan Life* that a similar likeness between § 502(f) of ERISA, 29 U.S.C. § 1132(f), and LMRA's § 301(a) was essential for extension of the complete preemption doctrine to ERISA, the court in *BLAB T.V.* found this resemblance neutralized by the absence of any expression in the legislative history that Congress intended § 612(d) to function like § 301. See *BLAB T.V.*, at 857.

Similarly, other evidence supporting the removal of the action failed to convince the panel in *BLAB T.V.* Congress's intention to create access to federal courts, create a federal cause of action, establish federal standards for cable access rates, even displace inconsistent state laws indicated to the court that strong federal interests were at stake. See *BLAB T.V.*, at 857-59. Nevertheless, this evidence did not compensate for the absence of a clear statutory expression that in taking these steps Congress possessed the particular requisite intent: to convert state law claims related to § 612 into claims "arising under federal law for purposes of removal jurisdiction." *BLAB T.V.*, at 857. Furthermore, the court pointed out that the congressional "signals" which defendants argued supported complete preemption were not

uncommon. Treating one or more of those factors as dispositive would undercut the recognized, traditional rarity of the doctrine. *See BLAB T.V.*, at 859 n.3.

In order for this court to retain jurisdiction over the present action, Trans Union and Goodrich Credit Union must show that FCRA possesses the "jurisdictional force" that the Eleventh Circuit found absent in the Cable Act. FCRA does establish federal causes of action and does establish federal standards to be applied in those actions. *See, e.g.*, 15 U.S.C. § 1681h(e). Even more significantly, 1996 amendments to the act expanded the preemptive effect of the statute by adding to the provision entitled "Relation to State Laws." The language of this section had been like that in similar provisions in other statutes, including the Cable Act:

> This subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

Pub.L. 91-508, § 622, 84 Stat. 1114 (1970).

Congress primarily amended this section by adding three subsections. *See* 15 U.S.C. § 1681t(b), (c), (d) (1994 & Supp.II 1996). Subsection (b) lays out exceptions to the preceding subsection where "[n]o requirement or prohibition may be imposed

under the laws of any State." Subsection (c) establishes that FCRA's definition of "firm offer of credit or insurance" shall be used in any state law concerning consumer reports. Finally, subsection (d) specifies the limitations on the scope of subsections (b) and (c).

Focusing on (b) and (c), defendants assert that the "extensive nature of the 1996 amendments suggest that Congress intended to completely preempt the field." Br. in Supp. of Def. Goodrich Credit Union's Removal Pet. and in Supp. of Jurisdiction at 4. While the 1996 amendments did make 1681t more closely resemble ERISA's preemption section, 29 U.S.C. § 1144, it does not approach that section's "virtually unique" expansiveness. *Franchise Tax Bd. of Cal.*, 463 U.S. at 24 n.26, 103 S.Ct. at 2854. Subsection (c) of § 1681t pertains to one definition out of many that could be at issue in an action involving credit reports. Subsection (b) merely lists exceptions to the general rule that only inconsistent state laws are preempted by the FCRA. The boundaries of these exceptions, by reference to individual sections or subsections of the act, to pre-existing state laws, and/or to state laws mentioned by name, are sharply drawn in subsection (b) itself, as well as subsection (d). By their own terms, the admittedly significant, but discrete preemptions established in the 1996 FCRA amendments

evidence no intent on the part of Congress to grant defendants such as Trans Union and Goodrich Credit Union the extraordinary ability to recharacterize state law claims as a federal cause of action. Defendants' assertion of such sweeping intent finds no support in the legislative history concerning the additions to § 1681t. *See, e.g.*, S. Rep. No. 104-185 at 54-55 (1995); 141 Cong. Rec. S5450 (daily ed. Apr. 7, 1995) (statement of Sen. Bryan).

Even if the statute's preemption provisions covered so much territory as to make defensive preemption of plaintiff's claims obvious, this would hardly settle the matter. *See Metropolitan Life*, 481 U.S. at 66-67, 107 S.Ct. at 1548. What has to be obvious is not an intent to preempt state law claims, but "an intent to make preempted state law claims removable to federal court." *Sherron*, 977 F.Supp. at 808. The logical place to look for such obvious intent is the jurisdictional grant. Tellingly, the jurisdictional grant under 15 U.S.C. § 1681, unlike § 301 of LMRA and § 502(f) of ERISA, and even the Cable Act's § 612(d), establishes concurrent state and federal jurisdiction over FCRA actions: "An action to enforce any liability under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, . . . ." 15 U.S.C. § 1681p. Not only

does the legislative history lack an expression of intent to affect the concurrent jurisdiction by granting defendants the ability to remove well-pleaded complaints, it indicates that Congress explicitly contemplated state courts entertaining FCRA actions.[5]

Because this court finds that Congress did not intend to make state law causes of action defensively preempted by the FCRA removable to federal court, it does not have removal jurisdiction over this action. The court need not reach the issue of whether plaintiff's claims are in fact defensively preempted. *See BLAB T.V.*, 182 F.3d at 858. The court leaves that determination, should it arise, to the able hands of the state court from whence this action was improperly removed.

## Conclusion

A separate and appropriate order will be entered.

---

[5] The language of § 1681p was passed into law when the 91st Congress amended the Consumer Credit Protection Act, which had been enacted in 1968. In the 91st Congress, the House and Senate passed conflicting versions of H.R. 15073, which as passed by the House primarily addressed foreign bank secrecy. The Senate created one conflict by adding, as Title VI of H.R. 15073, a bill that had previously passed its chamber, S. 823, which dealt with credit reporting. The jurisdictional provision of S. 823 stated that actions under certain sections "may be brought in any appropriate United States district court, or in any other court of competent jurisdiction." 116 Cong. Rec. 32641 (1970). The Senate passed this amendment to the House version without discussion. *See* 116 Cong. Rec. 32638-32644. The subsequent Conference Report on H.R. 15073 adopting the Senate's amendment to the Consumer Credit Protection Act only commented on the jurisdictional provision to say that it permitted "a suit in any appropriate U.S. district court without regard to the amount in controversy." H.R. Conf. Rep. No. 91-587. The contemplation of state courts as forums for FCRA actions is most clear in the earlier Senate Report on S. 823. That report states that the jurisdictional provision was meant to allow actions in federal and state courts. *See* S. Rep. No. 91-517, at 7.

DONE this  1st  day of November 2000.

/s/ William M. Acker, Jr.
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE